## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| MARIO ANTON LEE, | ] |
| | ] |
| Movant, | ] |
| | ] |
| vs. | ]   CIVIL ACTION NO. 03-LSC-RRA-8039-S |
| | ]   CRIMINAL NO. 00-LSC-RRA-0347-S |
| | ] |
| THE UNITED STATES OF AMERICA, | ] |
| | ] |
| Respondent. | ] |

## <u>MEMORANDUM OPINION</u>

This is a motion to vacate, set aside, or correct a sentence, brought by a federal prisoner, pursuant to 28 U.S.C. § 2255.  The movant, Mario Anton Lee, was convicted in this court on March 9, 2001, of one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C)(Count 2); one count of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C)(Count 3); one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D)(Count 4); and three counts of money laundering, in violation of 21 U.S.C. § 1956(a)(1)(A)(i)(Counts 9, 10, and 11).  He was sentenced on June 7, 2001, to terms of imprisonment for 20 years each on Counts 2, 3, 9, 10, and 11, and for 5 years on Count 4, with each count to be served consecutively, for a total sentence of 105 years,[1] to be followed by a 36-month term of supervised release.

On appeal, Lee claimed that:

_____

[1]  The sentences were ordered to be served concurrently with the 200-month sentence he received in this court on September 17, 1998, in *United States v. Lee*, CR-98-N-0006-S.

1) his prosecution in this case should have been barred because the government could have charged him with the same conduct in an earlier trial;

2) the evidence was insufficient to support his conviction for possession with intent to distribute marijuana in Count 4, based upon the eight pounds of marijuana found at the scene of Patrick Hall's murder, because he planned to kill Hall, not sell marijuana to him;

3) he was sentenced in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because he was sentenced to consecutive sentences, meaning that he would serve a total sentence that would exceed the statutory maximum for the drug convictions; and

4) the trial court erred in assessing a two-level sentencing enhancement for possession of firearms by a codefendant, pursuant to U.S.S.G. § 2D1.1, because he was acquitted of possession of a firearm in furtherance of a drug trafficking crime and because a co-conspirator pled guilty to the Patrick Hall murder.

On June 20, 2002, the Eleventh Circuit Court of Appeals issued an unpublished opinion, affirming Lee's convictions and sentences.  The mandate was issued on July 19, 2002.

Lee has now filed a § 2255 motion to vacate, set aside, or correct his sentence.  In support of his motion, Lee claims that:

1) the prosecution abused the grand jury process by:

> (a) intentional, blatant and deplorable violations of 18 U.S.C. § 201(c)(bribery of public officials and witnesses);
> (b) improperly procuring, soliciting and suborning perjury;
> (c) failing to correct known perjury;
> (d) obtaining an indictment in violation of the double jeopardy clause;
> (e) indicting him based upon improper, vindictive and selective prosecution based on race and retaliation;
> (f) failing to disclose the "deals" made with witnesses;
> (g) charging him duplicitously and multiplicitously in the indictment; and
> (h) indicting him on Counts 9, 10, and 11, despite this court not having venue over those counts;

2) there were egregious and flagrant acts of prosecutorial misconduct, in that:

-2-

(a) his convictions were obtained through the use of a grand jury that was unconstitutionally selected and illegally impaneled; and

(b) the government "improperly made prejudicial variances or constructive amendments [to] the indictment during trial by introducing evidence not allowed within the charging instrument";

3) the district court abused its discretion and committed multiple prejudicial errors by:

(a) failing to dismiss the indictment as barred by the double jeopardy clause;

(b) denying his pretrial motion for a continuance;

(c) denying him the opportunity to impeach a key prosecution witness with a videotaped statement;

(d) injecting judicial bias, advocacy and partiality throughout the trial;

(e) refusing to give a jury instruction on "accomplice-addictive drug user";

(f) allowing the prosecution to present testimony that the court knew or should have known was false;

(g) allowing the prosecution to constructively amend the indictment during trial;

(h) failing to give the full and complete jury instructions on the credibility of witness testimony; and

(i) refusing to "give a 'special' verdict as to the specific drug [Lee] was found by the jury to have distributed and what particular drug quantity was involved";

4) he received ineffective assistance of counsel prior to trial, at trial and sentencing, and on appeal because his attorney:

(a) conducted inadequate and incomplete investigations and preparations;

(b) failed to communicate with him properly before trial;

(c) failed to inform the court of the prosecutor's personal and intentional interference with her ability to adequately communicate with him;

(d) failed to file a timely motion to dismiss the indictment based on double jeopardy;

(e) neglected to make timely pre-trial objections that the indictment violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000);

(f) "failed to request a pretrial 'sequestration' order from the Court barring any and all further contact and communications between all of the cooperating government witnesses";

(g) failed before trial to object to and challenge the admissibility of any unreliable and unsubstantiated statements of the government's informants tending to incriminate him;

(h) filed a frivolous motion to dismiss the indictment on the grounds of collateral estoppel, then later admitted to him that collateral estoppel did not apply to his case;

(i) filed an untimely, insufficient and meritless motion to dismiss for vindictive prosecution;

(j) during her opening statement, injected "'physical' drug evidence into an otherwise drug-less or 'dry' conspiracy case," against the specific orders of the judge;

(k) neglected to object at trial, to the admission of the unsupported and incredible custodial hearsay statements of cooperating government informants;

(l) through her inadequate pretrial preparations, failed to discover the "true weaknesses of the government's case";

(m) made untimely objections to "the unreliable and unsubstantiated [custodial] 'hearsay' statements" during the sentencing hearing;

(n) negligently omitted from the appellate brief, various meritorious and valid claims that she had presented at trial by oral and written motions;

(o) failed to file an application for rehearing with the Eleventh Circuit Court of Appeals and a petition for a writ of certiorari in the United States Supreme Court; and

5) the evidence presented at trial was insufficient to support his convictions.

In response to the court's order to show cause, the respondent filed an answer on November 25, 2003, in which it maintains that the motion is due to be denied because the claims are either procedurally barred and/or without merit. By order entered December 8, 2003, the parties were advised that the respondent's answer would be treated as a motion for summary dismissal, and the movant was advised that in responding to the motion for summary dismissal, he must supply the court with counter-affidavits and/or documents to set forth specific facts showing that there are genuine issues of material fact to be decided.

On December 15, 2003, Lee filed a motion to amend his § 2255 motion.  On December 29, 2003, he filed an affidavit.  The motion to amend was granted on December 30, 2003, and Lee was allowed until February 16, 2004 to amend his motion to vacate.  Lee filed his amendment on February 18, 2004.  In the amendment, Lee reiterated many of the claims he raised in his original motion, and added a claim that his attorney was ineffective because she "did nothing nor made an attempt to change or challenge the venue" on the basis that Judge Nelson presided over his last trial (Claim 4(p)).

On June 18, 2004, the respondent filed an answer to the amendment to the motion to vacate, noting that but for the ineffective assistance of counsel/venue claim, the amendment had raised nothing new.  The respondent argued that even if the ineffective assistance of counsel/venue claim were not barred by the statute of limitations, it is without merit.

The movant filed a traverse on August 23, 2004.[2]  On September 1, 2004, the movant filed the affidavits of Brenda Jackson, Lee's mother; La Shaun Douglas, the mother of Lee's daughter; and Yvette M. Spencer, Lee's aunt and one of his co-defendants.  On February 10, 2005, he filed the affidavits of Ernest Levelle Patton, one of his co-defendants, and Gwendolyn Westbrook, Lee's aunt.

On April 19, 2005, Lee filed a document in which he reiterates his double jeopardy and ineffective assistance of counsel claims and argues that he is actually innocent of the crimes for which he was convicted.

─────────────────────

[2]  To the extent that he raises any new claims in his traverse, they are either barred by the statute of limitations because he did not raise them in this court until August 23, 2004, or if they can be found to relate back to claims raised in his original motion to vacate, they are barred by procedural default because he either raised them on his direct appeal or could have raised them on direct appeal.

On January 19, 2006, Lee filed another amendment to his motion to vacate, claiming that he was sentenced in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 124 S. Ct. 2531 (2004)(Claim 6). Lee also filed on January 19, 2006, a second memorandum in which he claims that the prosecution refused to disclose *Brady* materials (Claim 7).

## PROCEDURAL DEFAULT

All of Lee's non-ineffective-assistance-of-counsel claims are barred by procedural default. A § 2255 motion cannot be used to re-litigate issues that were raised on direct appeal. *Kastenbaum v. United States*, 588 F.2d 138, 139 (5th Cir. 1979). Lee presented his claims that the United States abused the grand jury process by obtaining an indictment in violation of the double jeopardy clause (Claim 1(d)) and that the evidence was insufficient to support his conviction of Count 4 (Claim 5) on direct appeal, and the Eleventh Circuit Court of Appeals found the claims to be without merit. Therefore, Lee is barred from raising these claims in his § 2255 motion.

Furthermore, Lee's claims that the United States abused the grand jury process by intentional, blatant and deplorable violations of 18 U.S.C. § 201(c)(bribery of public officials and witnesses); improperly procuring, soliciting and suborning perjury; failing to correct known perjury; indicting him based upon improper, vindictive and selective prosecution based on race and retaliation; failing to disclose the "deals" made with witnesses; charging him duplicitously and multiplicitously in the indictment; and indicting him on Counts 9, 10, and 11, despite this court not having venue over those counts (Claims 1(a), (b), (c), (e), (f), (g), and (h)); there were egregious and flagrant acts of prosecutorial misconduct in the case, in that his convictions were obtained through the use of a grand

jury that was unconstitutionally selected and illegally impaneled and b) the government "improperly made prejudicial variances or constructive amendments [to] the indictment during trial by introducing evidence not allowed within the charging instrument" (Claims 2(a) and (b)); and that the district court abused its discretion and committed multiple prejudicial errors by failing to dismiss the indictment as barred by the double jeopardy clause; denying his pretrial motion for a continuance; denying him the opportunity to impeach a key prosecution witness with a videotaped statement; injecting judicial bias, advocacy and partiality throughout the trial; refusing to give a jury instruction on "accomplice-addictive drug user"; allowing the prosecution to present testimony that the court knew or should have known was false; allowing the prosecution to constructively amend the indictment during trial; failing to give the full and complete jury instructions on the credibility of witness testimony; and refusing to "give a 'special' verdict as to the specific drug [Lee] was found by the jury to have distributed and what particular drug quantity was involved" (Claims 3(a), (b), (c), (d), (e), (f), (g), (h), and (i)), are barred by procedural default because he did not raise them on direct appeal.

"In general, a defendant must assert an available challenge to a sentence on direct appeal or be barred from raising the challenge in a section 2255 proceeding." *Greene v. United States,* 880 F.2d 1299, 1305 (11th Cir. 1989), *cert. denied*, 494 U.S. 1018 (1990). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." *Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir. 1994). If a defendant fails to pursue an available claim on direct appeal, he is barred from presenting the claim in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error. *Id; see also Cross v. United States,* 893 F.2d 1287, 1289 (11th Cir.), *cert. denied,* 498 U.S. 849

(1990).  "[A] prisoner collaterally attacking his conviction can establish cause for a procedural default if he can show that 'some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule,' or that his attorney's performance failed to meet the *Strickland* standard for effective assistance of counsel."  *Reece v. United States*, 119 F.3d 1462, 1465 (11th Cir. 1997).  In addition to showing cause, the movant must also demonstrate that he was prejudiced.  To show prejudice, he must show "not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." (emphasis in original).  *United States v. Frady*, 456 U.S. 152, 170  (1982).  A federal habeas court, however, will consider a procedurally defaulted claim in the absence of cause, if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent."  *Smith v. Murray*, 477 U.S. 527, 537-38 (1986) (*quoting, respectively, Engle*, 456 U.S. at 135, and *Murray,* 477 U.S. at 496).

The petitioner has offered nothing that would excuse the procedural defaults of these claims.[3] However, in his "Motion for Dismissal of the Federal Indictment and All Federal Offenses on the Grounds of Actual Innocence," he does make a conclusory claim that he is actually innocent of the crime for which he was convicted.[4]  In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court elaborated on the fundamental miscarriage of justice exception and the necessity of showing innocence.  To meet this exception, the petitioner "must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Schlup*, 513 U.S.

---

[3]  To the extent that Lee claims that his allegations of ineffective assistance of counsel are cause to excuse his procedural default, such an argument would not succeed since Lee's ineffective assistance of counsel claims are without merit, as discussed below.

[4]  On page 2 of his traverse, Seymour states that he "maintains his innocense [sic]."

at 327.  The standard focuses on the *actual* innocence of the petitioner.  As the Supreme Court

explained:

> Instead, the emphasis on "actual innocence" allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial.  Indeed, with respect to this aspect of the *Carrier* standard, we believe that Judge Friendly's description of the inquiry is appropriate: the habeas court must make its determination concerning the petitioner's innocence "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial."

*Id.* at 327 (*quoting* Friendly, *Is Innocence Irrelevant? Collateral Attack on Judgment*, 38

U.Chi.L.Rev. 142, 160 (1970)).  To be credible, a claim of actual innocence must be based on

reliable evidence not presented at trial.  *Fortenberry v. Haley*, 297 F.3d 1213, 1222 (11th Cir. 2002).

Lee has offered nothing to support his conclusory allegation that he is actually innocent.

Therefore, he has not met the requirements of *Schlup*.

Lee has procedurally defaulted Claims 1, 2, 3, and 5.  He has not established cause and

prejudice to excuse the default, or that he is factually innocent of the crimes for which he was

convicted.  Thus, these claims are due to be dismissed.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The United States Supreme Court has established a national standard for judging the

effectiveness of criminal defense counsel under the Sixth Amendment.  "The benchmark for judging

any claim of ineffectiveness must be whether counsel's conduct so undermined the proper

functioning of the adversarial process that the trial cannot be relied upon as having produced a just

result."  *Strickland v. Washington*, 466 U.S. 668 (1984).  The Court elaborated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.  "Because the [petitioner] must prove both deficiency and prejudice, a [petitioner's] failure to prove either will be fatal to his claim."  *Johnson v. Scott,* 68 F.3d 106, 109 (5th Cir. 1995).

Under the *Strickland* test, the petitioner must initially show that counsel's representation fell below an "objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  "While it need not be errorless, counsel's advice 'must be within the realm of competence demanded of attorneys representing criminal defendants.'"  *Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993)(*quoting Stano v. Dugger*, 921 F.2d 1125, 1151 (11th Cir.)(en banc), *cert. denied*, 502 U.S. 835 (1991)).  In making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  The effectiveness or ineffectiveness of counsel must be evaluated by consideration of the totality of the circumstances.  *Stanley v. Zant,* 697 F.2d 955, 962 (11th Cir. 1983), *cert. denied,* 467 U.S. 1219 (1984).

The second requisite element in a claim of ineffective assistance of counsel is a showing of prejudice.  Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice.  *Strickland,* 466 U.S. at 691-92.  In order to establish "actual prejudice, a petitioner must

show that "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." *Armstead v. Scott,* 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Strickland,* 466 U.S. at 694. Furthermore, in addition to showing that the outcome would have been different, a petitioner must prove that "counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair." *Armstead v. Scott,* 37 F.3d 202, 207 (5th Cir. 1994)(*citing Lockhart v. Fretwell*, 113 S. Ct. 838, 844 (1993)). "In other words, a 'counsel's unprofessional errors [must] so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict suspect.'" *Weekley v. Jones*, 56 F.3d 889, 897 (8th Cir. 1995)(*quoting Fretwell*, 113 S. Ct. at 842). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Fretwell*, 113 S. Ct. at 844.

Lee first claims that his attorney was ineffective because she conducted inadequate and incomplete investigations and preparations (Claim 4(a)(1)). More specifically, Lee alleges that she neglected to conduct any pretrial interviews with "any and all of the government's witnesses, and in particularly [sic], the cooperating government informants" or with agents of the special drug enforcement unit, and that she did not employ a private investigator. He asserts that had she taken these measures, she would have discovered evidence crucial to the defense.[5]

---

[5] Lee states such interviews could have shown that the informants had given unreliable statements, that an investigator could have testified that all of the cooperating witnesses had "actually gotten together at different jails and concocted their stories and trial testimonies against petitioner" and that all of the testimonies were "scripted and rehearsed prior to trial." He adds that an investigator would have discovered the existence of the custodial tapes made by law enforcement officers of exculpatory confessions and other statements by Kimberly King, which would have afforded counsel time to get the custodial video-tapes into evidence prior to trial.

In an affidavit prepared in response to Lee's claims of ineffective assistance of counsel, Susan James explains that she diligently prepared for Lee's trial.  She states that although she did not conduct pretrial interviews with cooperating witnesses, she did not believe it was necessary, because such measures are rarely fruitful when speaking with government witnesses, and because there was an extensive history of prior testimony by those witnesses, since several had testified against Lee in a prior trial.  She adds that her staff investigator undertook independent investigations of the prior criminal histories of the cooperating witnesses and of any leniency in sentencing afforded to them for their testimony, and that she had combed her own records for testimony provided by these witnesses in other cases and had voluminous discovery provided by the government, all of which gave her a wealth of information that was used for impeachment purposes.

The court concludes that Ms. James' strategy for compiling information to use for impeachment purposes was in no way constitutionally deficient.  Moreover, even assuming that Ms. James' actions could be found to be deficient in any way, Lee has failed to establish that there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different.  This claim is due to be dismissed.

Lee next claims that his attorney was ineffective because she failed to investigate the chain-of-custody of the government's drug evidence (Claim 4(a)(2)).  He claims that had she done this, "its credibility and admissibility would have become both a pre-trial and trial issue."  Lee has not identified the drug evidence to which he refers, nor has he identified any break in the chain of custody of any of the drug evidence.  His conclusory allegation that his attorney was ineffective for failing to conduct such an investigation is insufficient to support such a claim.  *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001).  Because he has failed to show either deficient

performance or that such performance prejudiced him an any way, this claim is due to be dismissed.

Lee claims that his attorney was ineffective because she failed to object to or otherwise challenge the venue on Counts 9, 10, and 11 as being improper because none of the alleged money-laundering acts occurred in the Northern District of Alabama (Claim 4(a)(3)).  Lee has made no allegation that even if the venue had been improper, he suffered any prejudice as a result.  This claim is due to be dismissed.

Lee next claims that his attorney was ineffective because she failed to communicate with him properly before trial (Claim 4(b)) and failed to inform the court of the prosecutor's personal and intentional interference with her ability to adequately communicate with him (Claim 4(c)).  He asserts that Ms. James only came to visit him one time before trial, for two hours or less, that this did not afford her enough time to glean important information from him, and that his defense was prejudiced as a result.  He also claims that he was prejudiced because Ms. James was unable to prepare for trial because the prosecutor personally and intentionally interfered with her ability to adequately communicate with Lee, but she did not inform the judge of this fact.

Even assuming that Ms. James was ineffective for failing to communicate more frequently with Lee before trial, that the prosecution hindered her access to Lee, and that she was ineffective for failing to inform the judge of this, the petitioner has offered nothing to support an argument that there is a reasonable probability that but for his attorney's claimed errors, the result of the proceeding would have been different.  These claims are due to be dismissed.

Lee contends that his attorney was ineffective because she failed to file a timely motion to dismiss the indictment based on double jeopardy (Claim 4(d)).  He alleges that although she finally filed such a motion, it was only filed after he demanded that she file it, and it was

"insufficient on its face, as a matter of law because it [was] unsupported by any authority or controlling precedent Eleventh Circuit case laws." He claims that if she had properly prepared it and filed it in a timely fashion, "there may not have been a second trial, second conviction, and second or successive punishment suffered by petitioner on this case."

The double jeopardy clause of the Fifth Amendment provides that no person shall be "twice put in jeopardy of life or limb" for the same offense. This provision has been consistently interpreted as "protect[ing] an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Missouri v. Hunter*, 459 U.S. 359, 365 (1983)(citations omitted). "The Double Jeopardy Clause provides three basic protections: it protects against a second prosecution for the same offense after acquittal; it protects against a second prosecution for the same offense after conviction; and it protects against multiple punishments for the same offense." *United States v. Moore*, 43 F.3d 568, 571 (11th Cir.), *cert. denied*, 116 S. Ct. 212 (1995)(*citing Ohio v. Johnson*, 467 U.S. 493, 498 (1984)).

Lee appears to complain that he was convicted in this case for an offense or offenses for which he had already been convicted and sentenced for in *United States v. Lee*, CR-98-N-0006-S. In his earlier case, Lee was convicted of one count of attempting to distribute cocaine. He was sentenced on September 17, 1998, to a term of imprisonment for 200 months.

In *Blockburger v. United States*, 284 U.S. 299 (1932), the Supreme Court established the test for determining whether two offenses are sufficiently distinguishable to allow the imposition of cumulative punishments:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there

are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

284 U.S. at 304.  The United States Supreme Court reaffirmed the *Blockburger* test in United *States v. Dixon*, 509 U.S. 688 (1993).  The *Blockburger* test emphasizes that each of the crimes must have at least one element to itself.  *Brown v. Ohio*, 432 U.S. 161, 166 (1977).  "If each offense requires proof of a fact that the other does not, the *Blockburger* test is satisfied despite any overlap in the proof necessary to establish the crimes.  *Moore*, 43 F.2d at 571 (*citing Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975).  In order to establish a violation of his double jeopardy rights, the petitioner must show that the crimes of which he was convicted are "in law and fact the same offense."  *United States v. Fiallo-Jacome*, 784 F.2d 1064, 1066 (11th Cir. 1986)(*quoting United States v. Marable*, 578 F.2d 151, 153 (5th Cir. 1978)).

An examination of the relevant statutes clearly shows that no double jeopardy violation occurred.  In the previous case, Lee was indicted and convicted on the following count:

> On or about the 8th day of November, 1993, within the Northern District of Alabama, the defendants, Mario Anton Lee and Ralph Davis, Jr., did knowingly, intentionally and unlawfully attempt to distribute in excess of 5 kilograms of cocaine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(a) all in violation of Title 21, United States Code Section 846.

In the current case, Lee was convicted on March 9, 2001, of one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C)(Count 2); one count of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C)(Count 3); one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D)(Count 4); and three counts of money laundering, in violation of 21 U.S.C. § 1956(a)(1)(A)(i)(Counts 9, 10, and 11).

-15-

It is clear from the indictment that each of the offenses for which Lee was convicted in the current case required proof of a fact that the charge for attempting to distribute cocaine in the earlier case did not.  The only charge in the current case that is remotely similar to the attempted distribution of cocaine charge is the conspiracy to distribute cocaine base charge in Count 2, and the need for proof of a conspiracy in Count 2 plainly distinguishes it from the distribution of cocaine charge for which Lee was convicted in the earlier case.  The *Blockburger* test of distinctness is satisfied and the movant's claim that his federal conviction subjects him to double jeopardy is without merit.  Therefore, Lee's attorney was not ineffective for failing to file an adequate or timely motion to dismiss the indictment on double jeopardy grounds.  This claim is due to be denied.

Lee next claims that his attorney was ineffective because she neglected to make timely pre-trial objections that the indictment violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000)(Claim 4(e)).  He contends that had she made a timely objection prior to trial, his maximum sentences would have been lower.

Lee raised his *Apprendi* claim on direct appeal and the Eleventh Circuit Court of Appeals held that "because no individual drug sentence exceeded the statutory maximum, there was no *Apprendi* error."  Ms. James was not ineffective for failing to raise this meritless claim prior to trial.  Moreover, Lee has failed to show that he suffered any prejudice, especially in light of the fact that the appellate court rejected the *Apprendi* claim.  This claim is due to be denied.

Lee claims that his attorney was ineffective because she "failed to request a pretrial 'sequestration' order from the Court barring any and all further contact and communications between all of the cooperating government witnesses"(Claim 4(f)).  He argues that she knew or should have known that the "informants would take advantage of such situations as being placed within the same

local jails, court holding-cells, and even being driven or transported together back and forth to Court proceedings including petitioner's trial, to further script and reinforce each others trial testimonies." Even assuming that Ms. James was ineffective for failing to request a "pretrial sequestration order," Lee has failed to establish that he suffered any prejudice. He has offered nothing to support a claim that any of the witnesses actually discussed his case or their testimony with each other prior to trial or during the trial. This claim is due to be denied.

Lee further claims that his attorney was ineffective because she failed before trial to object to and challenge the admissibility of any unreliable and unsubstantiated statements of the government's informants tending to incriminate him (Claim 4(g)). He maintains that he was prejudiced "in that had counsel properly [and timely] contested the reliability of the information and statements supplies by the informants by making a pre-trial request for a preliminary determination regarding the inadmissible 'hearsay' in the form of a pretrial-hearing [James hearing pursuant to *U.S. v. James*, 590 F.2d 575 (5th Cir. 1979)] under Rule 801(d)(2)(E) of the Federal Rules of Evidence, then the trial court would have been alerted to, or made aware of all the 'fabricated stories' and 'false testimon[ies]' before trial." Lee has not identified any of the statements of any of the witnesses that he claims should have been challenged, nor has he shown that the outcome of his trial would have been different if those statements had been challenged. Therefore, he has failed to show that Ms. James was ineffective for failing to challenge the unidentified statements or that he suffered any prejudice as a result. This claim is due to be denied.

The movant claims that his attorney was ineffective because she filed a frivolous motion to dismiss the indictment on the grounds of collateral estoppel, then later admitted to him that collateral estoppel did not apply to his case (Claim 4(h)). In response to this claim, Ms. James has stated that

she believed the collateral estoppel theory was valid in light of the previous prosecution of Lee on another drug charge.   Regardless of whether or not Ms. James could be found to have been ineffective for filing the motion, Lee has not alleged, much less proven, that he suffered any prejudice as a result of her unsuccessful motion.  This claim is due to be denied.

Lee claims that his attorney was ineffective because she filed an untimely, insufficient and meritless motion to dismiss for vindictive prosecution, just "one business day and three total days before trial" (Claim 4(i)).  Ms. James states that she filed the motion at Lee's "absolute direction and insistence."   Even assuming that Ms. James was ineffective for filing a meritless motion in an untimely fashion, Lee has offered nothing to support a finding that this prejudiced him in any way.  There is no evidence establishing that the prosecution was vindictive and that the outcome of the proceedings would have been any different if Ms. James had done anything differently.  This claim is due to be denied.

Lee claims that Ms. James was ineffective because during her opening statement she injected "'physical' drug evidence into an otherwise drug-less or 'dry' conspiracy case," against the specific orders of the judge when she mentioned Lee's prior cocaine convictions (Claim 4(j)).  He claims that the alleged error "may have caused the jury to transfer guilt from petitioner's first conviction and sentence to this case."  Ms. James states that mentioning the prior drug convictions was part of her trial strategy, because she knew that the prior convictions would be brought before the jury even though he had not been charged with the same conduct in the current case, and that Lee approved of the strategy.  Even assuming that Ms. James' strategy was ineffective, the movant has failed to establish that he was prejudiced as a result of this strategy.   The evidence against Lee was overwhelming.  There is nothing to indicate that there is a reasonable probability that but for Ms.

James' mentioning of the prior convictions, the result of the proceeding would have been different. This claim is due to be denied.

Lee next claims that his attorney was ineffective because she neglected to object at trial to the admission of the unsupported and incredible custodial hearsay statements of cooperating government informants (Claim 4(k)). He alleges that he was prejudiced in that "counsel's failure to object to all of the inadmissible hearsay presented by the prosecution and admitted into evidence at trial, amounted to an adopted party-admission." Although Lee does not identify the alleged statements, Ms. James states that the statements to which he refers were ruled admissible by the court pursuant to Rule 801(d)(2)(e), as statements of co-conspirators made during and in furtherance of the conspiracy. Lee's conclusory allegation that Ms. James was ineffective for failing to object to unidentified hearsay testimony and that this prejudiced him is insufficient to support a claim of ineffective assistance of counsel. This claim is due to be denied.

Lee next claims that due to her inadequate pretrial preparations, Ms. James failed sufficiently to develop the trial record with respect to crucial and exculpatory facts and to discover the "true weaknesses of the government's case" through her cross-examination of government witnesses (Claim 4(l)). He contends that he was prejudiced "thereby since counsel was not sufficiently prepared to explore and expose [various] legal and factual basis." Even assuming that Ms. James was ineffective for failing to discover the "true weaknesses of the government's case," Lee has failed to establish that there is a reasonable probability that but for Ms. James' alleged failure to sufficiently develop the record with respect to crucial and exculpatory facts and to discover the alleged weaknesses in the government's case, the result of the proceeding would have been different in any way. This claim is due to be denied.

-19-

Lee claims that his attorney was ineffective because she made untimely objections to "the unreliable and unsubstantiated [custodial] 'hearsay' statements" during the sentencing hearing (Claim 4(m)). He adds that his attorney "failed to raise claims of the government's evidence at trial and sentencing being based solely upon unreliable and uncorroborated 'hearsay' (self-serving) statements supplied by informants whose credibilit[ies] are known to be inherently unreliable, on direct appeal." He claims that he suffered prejudice because "a lesser standard of proof is required at sentencing, i.e., the 'preponderance of the evidence' rather than the higher proof required at trial 'beyond a reasonable doubt' standard." The court has already determined that Lee's claim that his attorney was ineffective for failing to make these objections at trial (Claim 4(k)), is without merit. As in Claim 4(k), Lee's conclusory allegation that Ms. James was ineffective for failing to object to unidentified hearsay testimony and that this prejudiced him is insufficient to support a claim of ineffective assistance of counsel. This claim is due to be denied.

Lee next claims that Ms. James negligently omitted from the appellate brief various meritorious and valid claims that she had presented at trial by oral and written motions (Claim 4(n)). Specifically, he asserts that:

> For instance, counsel failed to raise or present claims regarding the second conviction and successive punishment on the present case being barred by the Double Jeopardy Clause of the Fifth Amendment; vindictive prosecution extending from an outrageous act allegedly committed by the petitioner during the Sentencing Hearing held on the original indictment and conviction; and did not argue any of the "blatant and obvious acts of flagrant misconduct committed by the prosecution" solely to ensure or secure the return of the grand jury indictment, and subsequent, guilty verdicts by the jury on the case now before the court.

Lee maintains that these claims were "dead bang winners . . . making counsel's representation on appeal necessarily prejudicial because it affected the outcome of petitioner's first appeal."

-20-

Even assuming that Ms. James was ineffective for failing to include these claims on appeal, Lee has made not showing that there is a reasonable probability that if the claims had been included in his appeal, the outcome of the appeal would have been different.  This claim is due to be denied.

Finally, Lee claims that his attorney was ineffective because she failed to file an application for rehearing with the Eleventh Circuit Court of Appeals and a petition for a writ of certiorari in the United States Supreme Court, in spite of his family's specific requests that she do so (Claim 4(o)). Ms. James states that she "did not believe that she in good faith could advance" a "statement of certification to file an en banc petition."  She adds that she looked into the possibility of filing a petition for certiorari on the *Apprendi* issue, but she decided against it since her theory was novel and she believed such an argument was deficient.  Lee has not identified the claims he believes should have been pursued further.  Even assuming that Ms. James' failure to pursue Lee's case further could be considered as constitutionally deficient, Lee has made no showing that there is a reasonable probability that if his case had been pursued any further, the outcome would have been any different.  This claim is due to be denied.

## REMAINING CLAIMS

The petitioner's remaining claims that his attorney was constitutionally ineffective because she "did nothing nor made an attempt to change or challenge the venue" on the basis that Judge Nelson presided over his last trial (Feb. 18, 2004 Amendment)(Claim 4(p)); that he was sentenced in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 124 S. Ct. 2531 (2004)(January 19, 2006 Amendment)(Claim 6); and that the prosecution refused to disclose *Brady* materials (January 19, 2006 Amendment)(Claim 7), are barred by the statute of limitations.

-21-

Effective April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") made several changes in the law relating to habeas corpus procedure. The AEDPA amended 28 U.S.C. § 2255 to read in part, as follows:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Lee's conviction became final on October 17, 2002, when the time in which he could have filed a petition for a writ of certiorari to the United States Supreme Court expired. Thus, the one-year limitations period began running on October 17, 2002, and expired on October 17, 2003. Lee's original motion was timely filed on September 29, 2003. However, the amendments to his original motion were not filed until February 18, 2004, and January 19, 2006.

New claims raised in an amended § 2255 motion will relate back to the original motion and be considered timely filed if they "arise from the 'same core facts,' and [do] not depend upon events which are separate both in time and type from the events upon which the original claims depended." *Mayle v. Felix*, 125 S. Ct. 2562, 2570 (2005).

-22-

> [F]or an untimely § 2255 claim to "relate back" under Rule 15(c), the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings.  Instead, in order to relate back, the untimely claim must have arisen from the "same set of facts" as the timely filed claim, not from separate conduct or a separate occurrence in "both time and type."

*Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000)(citations omitted).  These claims

do not arise from the same set of facts as the claims raised by Lee in his original motion.  As a result,

Claims 4(p), 6 and 7, presented in the amendments to his original motion, do not relate back to the

date of his timely filed § 2255 motion, and are time-barred under the AEDPA.  These claims are due

to be denied.

An appropriate order will be entered.

Done this <u>19th</u> day of <u>September 2006</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153

-23-